```
 1  STEPHANIE M. HINDS (CABN 154284)
    United States Attorney
 2
    THOMAS A. COLTHURST (CABN 99493)
 3  Chief, Criminal Division

 4  ASEEM PADUKONE (CABN 298812)
    ANDREW SCOBLE (CABN 124940)
 5  Assistant United States Attorneys

 6       450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
 7       Telephone: (415) 436-6401
         FAX: (415) 436-7234
 8       Aseem.Padukone@usdoj.gov
         Andrew.Scoble@usdoj.gov
 9
    Attorneys for the United States of America
10
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) NO. 19-CR-00280-2 RS |
|---|---|
| v. | ) GOVERNMENT'S SENTENCING MEMORANDUM |
| EDWIN ALVARADO AMAYA, a/k/a "MUERTE" | ) Sentencing Date: February 21, 2023 |
|  | ) Time: 9:30 a.m. |
| Defendant. | ) |

Members of the MS-13 20th Street Clique engaged in several acts of violence throughout the Bay Area between 2013 and 2019, particularly in the Mission District of San Francisco. Some members only engaged in assaults. Defendant Edwin Alvarado Amaya, a/k/a "Muerte," went well beyond that. Alvarado Amaya has demonstrated a penchant for violence ever since getting involved with the clique in approximately 2016. He has admitted to being the main perpetrator in two vicious stabbings – one in May 2017 where he murdered another 20th Street

gang member, Giovanni Alvarez, a/k/a "P Wee," and one where he seriously injured R.L., who he believed to be a gang rival in November 2017.

Alvarado Amaya has accepted responsibility for his conduct and has reached an agreement with the government on a 300-month term of imprisonment to be recommended by both parties to the Court.[1] The government recommends that the Court impose this sentence, along with five years of supervised release, a $200 special assessment, $9,050 in restitution for victim R.L., and a restitution hearing if needed, for the family of Alvarez.[2] The government believes that a 300-month sentence is the lowest sentence necessary to achieve all of the goals of sentencing.

I. **Offense Conduct**

As set forth in more detail in Probation's Revised Presentence Investigation Report (the "PSR"), the MS-13 20th Street Clique claims territory in the Mission District of San Francisco. *See id*. at ¶48. One of the purposes of the clique is to defend its territory from rival gang members. *See id*. Clique members seek to maintain control of drug distribution on its turf, and they engage in various violent crimes (including murder). *See id*.

Members and associates often have gang monikers that are known to other members instead of their real names. *See* id. at ¶49. Alvarado Amaya's gang moniker is "Muerte," which means "death" in Spanish. *See* id. at ¶53. He first began associating with MS-13 20th Street in 2016 and became a fully jumped-in member while at Santa Rita Jail in 2020. *See* id. Alvarado Amaya flaunts his gang affiliation by sporting multiple gang tattoos, including a three-dot tattoo on his hand, tear drop tattoos on his face, and a "20th St." tattoo on his left forearm. *See* id.

In at least the two instances alleged in this case, Alvarado Amaya has acted as an enforcer for the clique. He was the principal attacker of Giovanni Alvarez, a/k/a "P Wee," a 20th Street member who had fallen out of favor with the clique. *See* id. at ¶54. SFPD discovered

---

[1] The maximum penalty on Count 7 is 120 months, so the government supports Probation's recommendation that Mr. Alvarado Amaya be sentenced to 300 months on Count 1 and a concurrent sentence of 120 months on Count 7. *See* PSR Revised Sentencing Recommendation.

[2] The government's victim/witness office is in contact with Alvarez's family. The family is determining whether they have any expenses for which they are entitled to restitution.

Alvarez's body with several edge wounds, with his face sliced to the point that brain matter was exposed. *See* id. at ¶55. Officers recovered a machete sheath near Alvarez's body, which later showed "very strong support" for the inclusion of Alvarado Amaya's DNA. *See* id. The DNA lab also found "moderate support" for Alvarado Amaya's DNA being found on the victim's left hand. *See* id. ¶54.

Alvarado Amaya has admitted to luring Alvarez into a car to transport him to a remote location in Bernal Heights Park, before brutally murdering him by repeatedly stabbing him in the face and neck. *See* id. ¶54. The government alleges that he conducted this attack under the direction of Elmer Rodriguez, a/k/a "Gordo." *See* Dkt. 737 (Third Superseding Indictment).

Alvarado Amaya's acts of violence did not end with that murder. On November 30, 2017 at approximately 5:30 a.m., Alvarado Amaya and four other 20th Street members and associates approached R.L. in a four-door sedan near a bus stop on Potrero Avenue and 24th Street. *See* PSR at ¶56. According to R.L., the driver accused the victim of being a "Buster," which is a derogatory term for a Norteño. *See id.* Alvarado Amaya and clique member Oscar Espinal, a/k/a "Chuy," got of the car and chased after the victim. *See id.* Espinal held down R.L. while Alvarado Amaya stabbed the victim approximately 15 times with a box-cutter style knife. *See* id. R.L. suffered life-threatening injuries because of the attack, including the 15 stab wounds to the back, chest, stomach, face, hands, and head. *See* id. at ¶¶56, 60. R.L. survived the brutal assault, but says that he is still in debt from hospital bills and remains living in a friend's garage. *See* id. at ¶60. The government determined that he is entitled to $9,050 in restitution based on the documentation he was able to provide the government.[3]

## II. Guidelines Calculation

The government agrees with Probation's calculation of the offense level as described in paragraphs 64 to 83 of the PSR. Alvarado Amaya's offense level for the RICO conspiracy is 43 because of the murder, and 37 for the VICAR attempted murder. Combining those offense

---

[3] Though his actual loss amount is likely greater given the severity of his injuries, the government relied on the documentation he was able to provide to show lost wages and medical expenses directly tied to his injuries.

levels together results in an offense level of 44.  His total offense level drops to 41 after factoring in acceptance of responsibility.

Alvarado Amaya does not have a prior criminal history.  *See* PSR at ¶¶86-88.  The Guidelines range is based on an offense level of 41 and a CHC of I is **324 to 405** months.

### III.     Section 3553(a) Factors

The factors listed under 18 U.S.C. § 3553(a) indicate that the parties' recommended sentence of 300 months' imprisonment is necessary to achieve the goals of sentencing.  The key 3553(a) sentencing factors in this case are the nature and circumstances of the offenses and the history and characteristics of the defendant, 3553(a)(1), and the need for the sentence to afford adequate deterrence and protect the public from further crimes of the defendant, 3553(a)(2).

**A.  Nature and Circumstances of the Offenses**

In a span of approximately six months in 2017, Alvarado Amaya participated in two heinous attacks that left one man seriously injured and another man dead.  He used a bladed weapon in both attacks, though the location of the attacks varied.  Alvarado Amaya ensured that he committed the May 2017 Alvarez murder in a remote location, by helping transport Alvarez to Bernal Heights Park in the middle of the night.  He was more brazen with the November 2017 attack.  That attempted murder took place on a heavily frequented street, albeit at 5:30 in the morning.  R.L. suffered 15 stab wounds during the Potrero attack, while Alvarez's face was brutally stabbed in the Bernal Heights murder.  Both attacks show that Alvarado Amaya embraces violence and lacks any regard for human life.  A significant term of incarceration is required to account for such conduct.

**B.  History and Characteristics of the Defendant**

Alvarado Amaya's history and characteristics also justify the term of imprisonment recommended by the government.  He has been an associate of the 20th Street clique since 2016, and in fact became a fully jumped-in member while in custody at Santa Rita Jail.  A mitigating factor (and the basis for the slight variance that the government recommends) is Alvarado Amaya's age at the time of the offenses and his relative status in the gang.  He was just twenty years old at the time of the attack with no prior criminal history.  The government also alleges

that he was acting on the orders of clique leader Elmer Rodriguez.  To be clear, his age and subordinate status in the clique by no means excuse his conduct.  Those mitigating factors, however, are ones that the Court should account for and justify the parties' recommended sentence.

### C. Protection of the Public and Deterrence

The Court must impose a substantial sentence on Alvarado Amaya to prevent him from committing future crimes.  Alvarado Amaya was the principal hands-on perpetrator in the two stabbings to which he has admitted.  He showed a willingness to take a human life, and then tried to do it again just six months later.  A lengthy incarceration for Alvarado Amaya is necessary to prevent him from attempting to murder anyone else, and to send a message to other gang members that committing acts of violence like Alvarado Amaya will result in them spending a large portion of their adult lives in prison.

### IV. Conclusion

Considering all of the 3553(a) sentencing factors, the government respectfully recommends a sentence of 300 months' imprisonment, a five-year term of supervised release, a $200 special assessment, a $9,050 restitution award for victim R.L., and restitution as ordered by the court for the family of Giovanni Alvarez following either a hearing or the parties' stipulation.

Dated:  February 14, 2023

STEPHANIE M. HINDS
United States Attorney

/s/
ASEEM PADUKONE
ANDREW SCOBLE
Assistant United States Attorneys