PETER L. ARIAN (Bar No. 238029)
(E-Mail: Peterarianlaw@gmail.com)
822 College Avenue, # 302
Kentfield, CA 94914
Telephone: (415) 785-4060
Facsimile: (415) 329-1408

Attorney for Defendant
EDWIN ALVARADO AMAYA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-0280 RS |
| Petitioner, | |
| v. | DEFENDANT EDWIN AMAYA'S MEMORANDUM RE: SENTENCING |
| EDWIN ALVARADO AMAYA, | |
| Defendant. | |

Defendant EDWIN ALVARADO AMAYA, by and through his attorney of record, Peter L. Arian, respectfully requests that the Court to adopt the joint recommendation of the parties and that of probation in determining his sentence: a prison term of 300 months. Mr. Amaya submits that twenty-five years of prison meets the overriding statutory directive of 18 U.S.C. § 3553(a): a sentence that is sufficient, but not greater than necessary to meet the goals of sentencing.

Respectfully submitted,

DATED: February 14, 2023       By   */s/ Peter L. Arian*
_____
PETER L. ARIAN
Attorney for Defendant EDWIN AMAYA

# SENTENCING MEMORANDUM

## I. INTRODUCTION

To be blunt: there is no justification for Mr. Amaya's conduct on the street, specifically the murder of a member of his own gang and the attempted murder of a perceived rival gang member. There is no minimizing his conduct, or the impact that his conduct has had on others, especially the family of decedent Giovanni Alvarez, or the R. L., the man that Mr. Alvarado attacked on Valencia Street. This memorandum does not intend to give lip service to the pain suffered by the victims in this case, but rather acknowledges it. The Court will hear from the victims in this case about the impact that Mr. Amaya's conduct has had on their lives. Hearing crime victims speak is often a visceral experience as their loss, their pain, and their requests for justice and vengeance are real and heartfelt.

This memorandum takes nothing away from those who will speak to the Court at Mr. Amaya's sentencing but does offer perspective on how Mr. Amaya came to be in the position he is in, and why the sentence that both parties and probation agree upon is reasonable. In short, twenty-five years is a lot of time, and is a 24-month variance from the low-end of the sentencing guidelines applicable in this case. Mr. Amaya came from a broken home and rural poverty in El Salvador to the United States as a teenager, where he found himself for the most part homeless and living in a tent in the Mission corridor. He was a child when he became a member of the 20th Street clique, he was not much more than a child when he killed Mr. Alvarez, and today he faces a sentence that is longer than the time he has already spent on this planet.

Accordingly, for these reasons he requests that the Court adopt the joint recommendation of the parties and probation.

## II.  THERE ARE NO OBJECTIONS TO THE PSR

After the proceedings mandated by Fed. R. Crim. P. 32, there are no outstanding objections to the probation report.  This includes the advisory guidelines calculation set forth in the report.

## III. SECTION 3553(A) ANALYSIS

### A.    Background and Characteristics

The facts of Mr. Amaya's upbringing and circumstances are well established by the PSR at ₱₱ 95-100.  He was raised in poverty and instability in El Salvador.  Mr. Amaya's mother lived abroad and his father was a drunk who frequently left home on extended drinking binges.  PSR ₱ 96.  As a result, Mr. Amaya was hanging out on the streets smoking dope by age nine.  *Id.*  The poverty of rural El Salvador cannot be understated: Mr. Amaya's family was on the lowest rung of society selling fish, tortillas, and sugar cane to get by.  PSR ₱ 97.

When he came to the United States in 2015, Mr. Amaya was just seventeen years old.  PSR ₱ 99.  Mr. Amaya suffered housing instability for most of the time that he was in the United States.  PSR ₱ 94 (before his incarceration Mr. Amaya was "living in the street, in hotels or with friends.).  When arrested in the instant case, Mr. Amaya reported to police that he was essentially living in a tent on Folsom street.

Mr. Amaya's troubles with mental health are also well documented by the PSR.  In 2018, he was diagnosed with "depression, PTSD and borderline intellectual functioning."  PSR ₱ 104.   The PSR quoted a 2018 psychologist's report which found that Mr. Amaya's "deficits in cognitive abilities can affect his judgment, ability to process and cope with difficulties, and make him more vulnerable to other people's influence."  PSR ₱ 105.

### B.    Mr. Amaya was 20 Years old When He Committed These Crimes

In addition to Mr. Amaya's difficult childhood, adolescence, and young adulthood, as well as his difficulties with mental health, the Court should also consider

the fact of his age at the time that these crimes were committed. While he is not a child under the law (arguably a manufactured legal distinction) Mr. Amaya was exceedingly young at the time of the offense. He had little, if any, stability that the average child enjoys. As stated above, he suffered the absence of his parents as a child, began using drugs at nine, and is mentally ill. He has a sixth-grade education. PSR ₱ 109. He was homeless from at least the age of eighteen to the time of his arrest at twenty. In short, Mr. Amaya did not have the same opportunities most people get to learn maturity, through experiences such as caring homes, loving parents, and adequate schooling. This is someone who's maturity and development was limited by his circumstances. Though he is an adult on paper, it is doubtful that Mr. Amaya was anything more than a child at the time of these offenses.

The law recognizes that "[c]hildren are constitutionally different from adults for the purpose of sentencing." *Miller v. Alabama*, 132 S. Ct. 2455, 2464 (2012). The law also recognizes that serious offenses committed by juveniles should be treated differently than offenses committed by adults. *See Graham v. Florida,* 560 U.S. 48, 68 ("developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence."). *Graham* instruct us that "[j]uveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved moral character' than are the actions of adults. It remains true that 'from a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." *Id.* at 68, quoting *Roper v. Simmons* 543 U.S. 551, 570 (2004).

While these cases are not directly applicable to Mr. Amaya because he was twenty at the time of the offenses, they do support the sentence proposed by the parties

1  (a two year variance from the low-end of the guidelines) because he was so young at

2  the time of his crimes.

3  **C.    Deterrence and Concerns for Public Safety are Mitigated by the Fact**

4  **that Mr. Amaya Will Ultimately be Deported**

5          Mr. Amaya is an alien and will be deported to El Salvador.  He will also be well

6  into his forties at the time of his release.  It is submitted that both the length of the

7  sentence and his deportation auger in favor of the proposed sentence.

8  **D.    The Sentencing Recommendations of the Parties Avoids Disparity with**

9  **Sentences Received or Contemplated in Pending Sentencings for Other**

10  **Co-Defendants**

11          The government's structuring of sentencing in this case is built around relative

12  culpability.  Sentences received by Mr. Amaya's co-defendants have thus far not varied

13  from the government's sentencing recommendation.  Arguably, in this case the

14  government's understanding of the defendant's relative culpability is likely the best

15  informed: the have sat through proffers with a number of cooperators, which is

16  information that the defense, probation, and the Court are not privy to.  This

17  information has allowed them to assess where in the pecking order each defendant is,

18  what that defendant's actions were, and what they believe a reasonable sentence should

19  be.

20          Accordingly, Mr. Amaya's recommended sentence is, in the mind of the parties

21  and probation, consistent with his conduct relative to his co-defendants.  To sentence

22  him otherwise would disrupt that analysis and create a disparity in sentencing.

23

24

25

26  //

27  //

28

1

# IV. CONCLUSION

For the reasons stated above, Mr. Amaya requests that the Court adopt the sentence jointly recommended by the parties and probation.

Respectfully submitted,

DATED: February 14, 2023          By   */s/ Peter L. Arian*

PETER L. ARIAN
Attorney for Defendant EDWIN AMAYA